Our second case for argument today is United States v. Black. Mr. Greenberg. Good morning, Your Honors. This case involves a very basic issue in criminal law, mens rea. And what does a jury have to find in order to find someone guilty of an offense? In this case, the jurors were given an instruction that said that the defendant had to believe that the substance that he was attempting to deal with was a controlled substance or an analog, but the government was not required to prove that he knew that the substance was actually a controlled substance. That's not the law. The law is that a defendant, in a case involving a controlled substance or an analog, has to know that the substance is a controlled substance. That just seems to read attempt out of the law. This was an attempt charge, and you don't have to complete every step in order to commit the offense of attempt. Correct, but you have to know that— I'm glad you think that the court is correct. You have to know that what you're attempting to possess is still a controlled substance. Why? Why? What case establishes that proposition? Well, McFadden says that you have to know that it's a controlled substance, not in the case of an attempt. Exactly. But you have to attempt to— To attempt, you have to intend to commit the crime and take a substantial step. You don't have to know that any particular thing is some other thing. The definition of attempt is a desire to commit the whole crime and a substantial step. Correct. Was there any problem in the charge to the jury on those two elements of the attempt crime? Yes, because the jurors were told in this conflicting instruction that the defendant had to believe that he was trying to possess or attempting to possess an illegal substance. You have to try to commit the crime. Right. So the crime itself requires— What was the error in the jury instruction, then? The jury instruction said two completely contrary things. It said that the jurors had to find that he believed that it was a controlled substance, but he didn't have to know it was a controlled substance. And, in fact, those are the same. Whether you believe it or know it under the law, those are the same thing. So when you're saying—you still have to attempt to commit the underlying crime. So when you've got that definition, when you've got a controlled substance offense, you still have to intend or know that you're trying to acquire a controlled substance. I couldn't say that I want to attempt to acquire a peanut butter and jelly sandwich and, therefore, because I took a substantial step, be convicted of this crime. In other words, you need the drug element, and that's what's missing here. But it's just—the government has more—maybe the government over-tried their case, but aren't the phone calls enough? The government could have stopped right there and said your guy's guilty. They very well could have, but they didn't. And the phone calls, they still would have had to show when they played the phone calls that Roland Black had the knowledge that what he was trying to acquire— Was a fentanyl analog. Was an illegal fentanyl analog. No, that's—no, no, no. I don't think they have to establish that he knew it was on the controlled substance list. They just have to prove that he attempted to possess X. And then they have to prove X is on the controlled substance list, not that he knew X was on the controlled substance list. I don't think they have to prove necessarily that he knew X was on the controlled substance list. They have to prove that the substance he was attempting to acquire was an illegal substance. They have to prove that. You have to have the knowledge. So when you have a substance that wasn't illegal and then months before became illegal— But why do they have to prove if they—let's say it was cocaine. He attempted to prove—he attempted to possess cocaine. Why would they have to prove that he knew or believed that cocaine was on the controlled substance list? They just have to prove that he attempted to possess cocaine. And then separately they have to prove cocaine was on the controlled substance list. It would be weird if a defendant was able to say, Yes, I attempted to possess cocaine, but I had no idea that it was listed as a controlled substance. Nobody would make that argument because it's ridiculous. Fentanyl was created in a lab. Right. So that's—I mean, that's why we're here, right? Well, and I think that the law says that when you've got heroin, cocaine, substances like that, that everyone knows those are illegal. But when you've got the synthetic, it's different. In McFadden, the Supreme Court said when a substance is an analog, the knowledge requirement is met. If the defendant knew the substance was controlled under the Controlled Substances Act or the Analog Act, even if he didn't know its identity or if he knew the features of the substance, they would make it a controlled substance analog. There still needs to be some knowledge by the individual that the substance that he's attempting to acquire is an illegal substance. Otherwise, we have the person attempting to acquire a substance that they believe isn't illegal. I don't think that's what McFadden says. McFadden says showing that the defendant knew the identity of the substance he possessed. The defendant attempted to possess X, period. If X is on the controlled substances list, the defendant is guilty of attempting to possess a controlled substance. Well— As long as the defendant knew the identity of the subject, the substance he possessed. I've got a quote from McFadden. It says when the substance is an analog, that knowledge requirement is met if he knew the substance was controlled under the CSA or the Analog Act, even if he didn't know its identity. That's on page 188 to 189 of the opinion. Could I ask you another question on standing to challenge the seizure of the package? How does your client have a reasonable expectation in the package to challenge standing? Well, he had a reasonable expectation in the package because it was being sent to him and he had an expectation of privacy in something that was being sent. The government's theory was that it was his package and I think that everyone has an expectation of privacy. I don't think that the government, for instance, could go to my— I thought he challenged that. He challenged it at trial, but I think for purposes of the motion to suppress in the briefing, they had conceded that. On that motion, Mr. Greenberg, I just want to confirm, you're not challenging the duration of the time that the package was detained and you're not challenging the warrant back search, you're just challenging that initial seizure, correct? Right, that the seizure itself should not have taken place, correct. I will reserve the rest of my time, thank you. Certainly, counsel. Mr. Fullerton. Good morning, may it please the court. The jury instruction here, the pattern jury instruction was appropriately given. This was charged as an attempt to possess controlled substance and the district court used the pattern for attempt to possess controlled substance, modified to reflect that the package that Mr. Black actually attempted to possess on the day he was arrested contained sham narcotics, not real narcotics. They had been substituted by the law enforcement officers after the package was pulled out of the mail and searched. And that instruction was appropriate in these circumstances. This paragraph that Mr. Greenberg is focused on, the government had to prove the defendant believed the package contained a controlled substance but he didn't have to know it actually contained a controlled substance, was fitting in this case involving sham. And the belief sentence there… Why was that instruction even necessary? It's not necessary, I agree. So why was this totally unnecessary instruction given? It's enough to convict that he ordered fentanyl, right, and took a substantial step toward possessing it. Right. That's the crime. It's all done then. Agreed, Your Honor. The party, the government proposed it because it was part of the pattern and I think the district court used it because it came out of the pattern instruction book. It's not erroneous, however, even if it was not needed, strictly speaking. And the belief element in that contested paragraph of that instruction really informs the intent element that the government had to prove on Mr. Black's part, that he intended to possess a controlled substance. And one reason or one way to prove that Mr. Black intended to possess a controlled substance and that his act was in furtherance of that was because we could prove that he believed it contained a controlled substance. So it wasn't erroneous. It just sounds like too many different shades of intent. If I order some coffee from Amazon and they erroneously ship flour, I have intended to possess coffee, right? Why should it matter what they actually put in the box? Other than the fact that I'm going to return it if it's not coffee. Right. I agree, Your Honor. It's not necessary for all the elements of an attempted possession of controlled substance, but it didn't prejudice the defendant, it wasn't erroneous, and it was part of the pattern. So the district court didn't abuse its discretion in giving that instruction. Mr. Fulton, the district court did not give any reasoning about the denial for the evidentiary hearing. Are there fact issues here, such as the mismatch between the purported sender and recipient of the address of where the package was going and what was listed on the package? If there are fact issues like that, shouldn't there have been an evidentiary hearing? Certainly, if there had been disputed issues of material fact, the hearing would have been warranted. Here, there were no disputed issues of material fact. I'm aware of the issue that you're speaking about, but the district court, in writing its order denying the motion to suppress, said there wasn't any disputed issues of material fact. So it found nothing material about any disputes. The district court was correct that there was plenty of reason to believe there was reasonable suspicion, aside from this issue that I want to talk about now, where the government represented in its response to the motion that the, I believe it was the postal inspector who pulled the package out of the mail, had confirmed that the sending address and the recipient address were fictitious, basically. That, however, was not reflected in that postal inspector's report, but it was reflected in the search warrant affidavit that was executed the following day. So there was an absence of this representation in the report, but it showed up in the search warrant affidavit. The government acknowledged this deficit in the report in its response to the motion, and there was really nothing writing on that, because there was plenty of support for reasonable suspicion to pull the package out of the mail, and I don't believe there was any need for that, for resolution of that fact. The district court didn't find there was any need to resolve that fact in its determination. So that's the only dispute I can think of. Other than that, the parties agreed on what had happened. Perhaps law enforcement's knowledge of the international origin of the materials? Oh, the international origin of the package, mostly the fact that it was the sending of the package and the receipt of the package  and he had a long history of doing this, and everything about the transaction was suspicious, which caused them to look for the package, and indeed they found it, the very one that he had described, sending to Maria Gonzalez on North Springfield Avenue in Chicago. So if there are no more questions, we'd ask that the court affirm the judgment. Thank you. Thank you, Mr. Fullerton. Anything further, Mr. Greenberg? Just a couple of points. First, Justice Brennan, turning to your question, I don't think that they knew that the package came from a foreign country until after the package was seized. They didn't know what those letters meant, HK, although it turns out it meant Hong Kong. And there were some other disputed factors, so we do agree that an evidentiary hearing would have been appropriate where the defense could have questioned the agents and determined what they actually knew, not what was claimed after the fact. Turning back to the instruction issue for a moment, there is a Seventh Circuit case, Linder v. Lammer, which I am a Lexus site for, 2022 U.S. APP Lexus 37726, where the court says the same thing we had said, or I said earlier about the knowledge requirement when you've got an analog substance, that there still is a knowledge requirement in an attempt case, even when the attempt is to acquire an analog. And I think that that points up sort of the question that Justice Easterbrook asked, which is... I'm glad you're promoting all of this, but we are in fact judges. Yes, well, it ties into the flour and coffee. If you thought that you were ordering flour and flour was legal and you got coffee and coffee was illegal, you should know that the coffee is illegal. If you thought you were ordering coffee, which you knew was illegal, then you would satisfy the knowledge requirement. But in any crime, in any felony crime like this, you have to know that the substance you're attempting to acquire or acquiring is in fact an illegal substance. Why? Because otherwise you're not acting with an illegal menstrual. You're acting with the intent to do what you're doing. That is, it's not accidental. When I say I ordered coffee from Amazon, I knew very well I was ordering coffee from Amazon. I don't need to know whether coffee has recently become illegal in Chicago. Maybe it should be. Well, but I believe that in order to be convicted of any crime like this, you need a mens rea. And for the mens rea... The mens rea is intentionally ordering coffee. But we're not going to argue about this. Your time has expired. The case is taken under advisement.